ANNA E. BALDWIN, Administratrix, *vs.* CHARLES F. ROGERS, impleaded, etc.

December 24, 1881.

**Conveyance Fraudulent as to Creditors—Homestead.**—O'L. owned 320 acres of land, encumbered by sundry mortgages, instalments of each of which were overdue and unpaid. He conveyed the same to R., being at the time of the conveyance insolvent, as R. had notice. The deed of conveyance was absolute, but the real agreement between O'L. and R. was that the latter should assume and pay off all the mortgages and the taxes, dispose of the land, and pay over to O'L. any surplus remaining after the encumbrances were satisfied. O'L.'s object and intent in making the conveyance was to shield any surplus over and above the encumbrances from his creditors and save it for himself, and of this R. had notice. Upon receiving the conveyance, R. went into immediate possession of the premises, and so continues, and he has paid off the taxes and some of the mortgages in full, delivering up to O'L. the notes secured thereby, as also a note secured by another mortgage. Of the 320 acres of land one 80 was O'L.'s homestead at the time of the conveyance, upon

which he and his family resided, and as such it was exempt from execution. *Held*, with a reference to *Piper* v. *Johnston*, 12 Minn. 60, and following *Morrison* v. *Abbott*, 27 Minn. 116; *Ferguson* v. *Kumler*, Id. 156; and *Furman* v. *Tenney*, *ante*, p. 77, that the conveyance of the homestead 80 is valid against O'L.'s creditors. *Also*, that said 80 is as much protected from judgments and decrees against O'L. in the hands of R., after the conveyance to him, as it was in the hands of O'L. before the conveyance.

**Same—Fraudulent Intent and Act working a Fraud must concur.—** *Held, further*, that to make a debtor's transfer of property fraudulent as respects his creditors, there must be an intent to defraud, express or implied, and an act which, if allowed to stand, will actually defraud them by hindering, delaying, or preventing the collection of their claims. The fact that the debtor mistakenly supposes or hopes that, in conveying his encumbered property, he has secretly covered up and saved something for himself, from which he designs and endeavors to exclude his creditors, does not necessarily make his conveyance fraudulent. If, notwithstanding his hopes, suppositions, and intent, it is beyond question that the encumbrances exceed the value of the property, so that there is in fact nothing left for him to cover up and save, and nothing from which to exclude his creditors, they are not injured or defrauded, and therefore cannot have the conveyance set aside.

This action was commenced by M. A. Baldwin, in the district court for Wabasha county, to subject certain land to levy and sale on an execution issued in his favor against the property of defendant Michael O'Laughlin, and which land—a tract of 320 acres—had been conveyed by O'Laughlin, (who was a widower,) to defendant Rogers, by deed absolute in form, prior to the rendition of the judgment on which plaintiff's execution issued, but subsequently, as alleged, to the time when the indebtedness on which the judgment is founded, accrued. Defendant Rogers answered, and the case was tried by *Mitchell*, J., without a jury, who found the facts as recited in the opinion, and ordered judgment declaring the conveyance to Rogers void as to creditors. This appeal was taken by defendant Rogers from the judgment, and, the respondent Baldwin having died, his administratrix was substituted as respondent by order of this court. (See *ante*, p. 68.)

v.28—35

*Stocker & Matchan* and *Lloyd Barber*, for appellants.

At the time of the conveyance by O'Laughlin, he was occupying eighty acres as a homestead, and under Gen. St. 1878, *c.* 68, § 8, he could make a valid conveyance of at least the eighty acres, although at the time insolvent. *Smith* v. *Rumsey*, 33 Mich. 184; *Washburn* v. *Goodheart*, 88 Ill. 229; *Carhart* v. *Harshaw*, 45 Wis. 340; *Delashmut* v. *Trau*, 44 Iowa, 613; *Derby* v. *Weyrich*, 8 Neb. 174; *Hixon* v. *George*, 18 Kan. 253; *Morrison* v. *Abbott*, 27 Minn. 116; *Ferguson* v. *Kumler*, 27 Minn. 156.

*Hahn & Benedict* and *Gordon E. Cole*, for respondent.

In this case, the debtor was a widower and has not answered or appeared, or in any manner set up a claim of homestead to any of the land in controversy. The homestead right is a personal one, and a fraudulent grantee cannot be allowed to set it up as a defence. *Howland* v. *Fuller*, 8 Minn. 30 (50;) *Ferguson* v. *Kumler*, 27 Minn. 156; Thompson on Homesteads and Exemptions, § 438.

As the debtor himself does not set up a claim of homestead to this land, he is not estopped from setting up that claim to any other property which he may have, or may acquire; and if it is held that a stranger to the homestead right, like the defendant Rogers in this case, may set up this claim, there is nothing to prevent a debtor from claiming and disposing of all his property piecemeal as homesteads. *Currier* v. *Sutherland*, 54 N. H. 475; Thompson on Homesteads and Exemptions, § 419.

In all the cases cited by appellant, the claim of homestead was set up by those entitled to use and receive the benefits of homesteads.

BERRY, J.* The facts following are found by the court below:

On July 10, 1879, a judgment was duly entered and docketed in the district court for our county of Wabasha, in favor of plaintiff and against defendant O'Laughlin, founded upon an indebtedness of the latter to the former, existing for more than one year prior thereto. Execution, issued July 12, 1879, was on July 16, 1879, duly levied upon 320 acres of land, to-wit, the west half of section 35, township 111, range 13, Wabasha county.

*Mitchell, J., having tried the case in the district court, took no part in the decision of this appeal.

On April 16, 1879, O'Laughlin was owner and in possession of said land, which was of the value of $10,000 to $12,000. He resided on it, he and his family occupying the north half of the south-west quarter (80 acres) as a homestead, the same being exempt from execution as such. The land (the 320 acres) was subject to encumbrances to the amount of $9,435.44, as follows: $4,278.86 by mortgages known as the Gates mortgages, $5,066.58 by mortgage to Scott, and $90 overdue taxes. The Gates mortgages were first, but covered the south-west quarter only (160 acres) of section 35. The Scott mortgage covered the whole west half (320 acres) of the section. Scott held his mortgage, and the debt secured by it, as trustee for the wife of defendant Rogers, and he was Scott's agent in its management and collection. Instalments of all the mortgages were overdue and unpaid.

On April 16, 1879, O'Laughlin conveyed all of the west half of section 35 to defendant Rogers, subject to said mortgages. The deed of conveyance is absolute on its face, but the real agreement between the parties was that Rogers should assume and pay off all of the mortgages and taxes, sell and dispose of the land, and pay over to O'Laughlin any surplus of the proceeds remaining after the encumbrances were satisfied. O'Laughlin was at that time insolvent, and threatened with suits by his creditors, (of which fact Rogers had notice,) and his object and intent in making the conveyance were to shield any surplus of the lands over and above payment of the encumbrance from his creditors, and save the same for himself. Of this object and intent Rogers had notice, but his own object and purpose in taking the conveyance was to protect his wife's mortgage. Rogers went into immediate possession of the premises (320 acres) under O'Laughlin's deed to him, and so continues. At the date of the deed, Rogers paid the delinquent taxes before mentioned to the amount of $90, and cancelled and delivered up to O'Laughlin an overdue note, secured by the Scott mortgage, for $480. On the 23rd of April, 1879, he paid $561.88 on the Gates mortgages, and on July 15, 1879, he paid up the balance of the Gates mortgages, ($3,731.76,) and delivered up the notes secured thereby to O'Laughlin. Except

as above stated, Rogers has paid no consideration for the premises conveyed to him.

Upon these findings of fact the court below finds as a conclusion of law that the conveyance from O'Laughlin to Rogers is void as to plaintiff, and that the premises conveyed are subject to plaintiff's execution.

This case was determined by the court below in accordance with what has been generally understood to be the tendency and logical result of *Piper* v. *Johnston*, 12 Minn. 60, and before the decisions of this court in *Morrison* v. *Abbott*, 27 Minn. 116; *Ferguson* v. *Kumler*, Id. 156; and *Furman* v. *Tenney*, ante, p. 77, were promulgated. So far as this court is concerned, the latter cases establish the rule that a debtor's transfer of property exempt from execution is not void, but valid, even against his creditors, though the transfer be voluntary. It is, of course, no less valid if made upon a consideration. It follows that the conclusion of law found by the court below is erroneous, as respects the 80-acre tract which constituted O'Laughlin's homestead. As to that tract, there was no fraud upon his creditors in his conveyance to Rogers; and as that tract is not only distinct and separable, but in fact separated by its legal boundaries from the remainder of the 320-acre tract conveyed to Rogers, the conveyance may well be and is upheld as to it, even though it be fraudulent as to the remainder. In other words, the conveyance is good so far as it was lawful for O'Laughlin to make it.

Conceding, as is found by the trial court, that the 320-acre tract, of which the 80-acre homestead is part, was conveyed by O'Laughlin to Rogers upon an agreement that the latter should assume and pay the encumbrances, sell and dispose of the tract, and account for and return to O'Laughlin any surplus of the proceeds which should be left after paying the encumbrances, the case is one in which the homestead owner has sold and conveyed his homestead as the statute authorizes him to do. The land which constituted the homestead is no longer his, either by legal or equitable title. He has retained no interest in it whatever. It is not held for him. He has parted with the title as absolutely as it is possible for him to do, and there is no

trust, understanding or agreement by which it is ever to be restored to him, or to be subject in any degree to his control. So far as this case, then, is concerned, any apprehension that if the conveyance of O'Laughlin's homestead to Rogers be upheld, it might be possible for him to hold two homesteads, one openly and the other under cover, would appear to be unfounded.

The plaintiff's position, that the homestead right is a personal right, which can only be asserted by the person whose homestead right it is, is utterly inconsistent with the decisions of this court before cited. If the owner of a homestead cannot sell and convey it so that his grantee can avail himself of the fact that it was a homestead, against the grantor's creditors, what possible meaning can be attributed to the statute where it says that "the owner of a homestead, under the laws of this state, * * * may sell and convey the same, and such * * * sale and conveyance shall not render such homestead liable or subject to forced sale on execution or other process hereafter issued on any judgment or decree of any court of this state, or of the district court of the United States for the state of Minnesota, against such owner. Nor shall any judgment or decree of any such court be a lien on such homestead for any purpose whatever?" (Gen. St. 1878, *c.* 68, § 8.) If this does not mean that the land constituting the homestead is as much protected in the hands of the grantee as it was in the hands of the grantor from the judgments and decrees mentioned, and that the former may assert his right accordingly, it means nothing.

The court below has not found the value of the homestead. It does not therefore appear, as defendants contend, that if the homestead be deducted, the remainder of the 320-acre tract is of less value than the amount of the encumbrances. But as there was testimony tending to establish such to be the fact, it is well enough for us, with reference to a possible future trial, to consider its effect. To make a debtor's transfer of property fraudulent as respects his creditors, there must be an intent to defraud, express or implied, and an act which, if allowed to stand, will actually defraud them by hindering, delaying, or preventing the collection of their claims. Whatever may be the debtor's intent, where there is no act which will have this effect,

the creditor is not damaged or defrauded.    The fact that the debtor mistakenly supposes or hopes that in conveying his encumbered property he has secretly covered up and saved something for himself, from which he designs and endeavors to exclude his creditors, does not make his conveyance fraudulent.    If, notwithstanding his hopes, suppositions and intent, it is beyond question that the encumbrances exceed the value of the property, so that there is nothing left for him to cover up and save, and nothing from which to exclude his creditors, they are not injured or defrauded; and as the conveyance, therefore, in no way affects them, it is not fraudulent as to them, and they cannot have it set aside as void.    See *Williams* v. *Robbins*, 15 Gray, 590; *Credle* v. *Carrawan*, 64 N. C. 422; Bump on Fraud. Con. (2d Ed.) 19; *Rice* v. *Perry*, 61 Me. 145.    This rests upon the same principle as the rule established in this court, that a debtor's transfer of exempt property is not fraudulent as to his creditors, though he may have, in fact, intended to defraud them in making it.

As to whether, in case the transfer of the remainder of the 320-acre tract, after deducting the homestead, should be found to be fraudulent as to O'Laughlin's creditors, Rogers would be subrogated to the rights of the mortgagees whose mortgages he has paid, is, as the court below properly held, a question not involved in this action. The effect of this finding would be to declare the conveyance void to the extent of such remainder as respects the creditors, and the plaintiff, as one of them, would be entitled to levy his execution thereupon.    To accomplish this result is the sole purpose of this action. If Rogers has any such right of subrogation, it is one which he acquired after the conveyance was made, and he must seek to maintain it in some other proceeding.

Judgment reversed, and a new trial directed.