## H. B. FRYBERGER v. KNUTE BERVEN and Others.[1]

January 16, 1903.

Nos. 13,284—(198).

### Fraudulent Conveyance of Contingent Interest.

The owner of land sold it. His deed therefor contained a stipulation to the effect that he should receive as a part of the purchase price a further sum of $10,000 when, and not until, two hundred thousand tons of iron ore were mined and shipped from the granted premises, and reserved a lien thereon to secure the payment of such sum. He afterwards conveyed and assigned all his interest of every kind in and to the land to his wife, to defraud his creditors. This is an action in the nature of a creditors' bill by the plaintiff, as a judgment creditor of such owner, to subject the interest so conveyed to the payment of his judgment. *Held*:

### Contingent Interest by Reservation in Deed.

1. The stipulation in the deed created a lien on or an interest in the granted premises by reservation to secure the balance of the purchase price thereof. Such interest is property which may be sold by appropriate proceedings for the payment of the plaintiff's judgment.

### Presumption—Value.

2. The court cannot presume, in the absence of evidence, that the interest fraudulently conveyed was of no substantial value, hence there

[1] Reported in 92 N. W. 1125.

could be no actionable fraud in its transfer. Baldwin v. Rogers, 28 Minn. 544, and other cases following it, distinguished.

## Evidence of Insolvency.

3. The return of an execution, issued on the plaintiff's judgment, unsatisfied, was competent and sufficient evidence to establish the fact of the insolvency of the judgment debtor, and of no property in him to satisfy the judgment.

## Resort to Equity.

4. A rule which forbids a resort to equity where there is an adequate legal remedy is not to be applied so strictly as practically to deny to a party any reasonable means for enforcing his legal or equitable rights.

## Order of Court.

5. The trial court did not err in directing judgment to the effect that the plaintiff's judgment was a lien on the reserved interest of the judgment debtor in the land, and that such interest be sold to pay the judgment.

## Evidence.

6. The evidence supports all of the facts found by the trial court which are essential to sustain its judgment.

Action in the district court for St. Louis county, in the nature of a creditors' bill, against defendants, Knute Berven and the administrator of the estate and heirs of Johanna Berven, deceased. The case was tried before Ensign, J., who found in favor of plaintiff. From a judgment entered pursuant to the findings, defendants, John Brown as administrator and the heirs appealed. Affirmed.

*John Jenswold, Jr.,* for appellants.
*H. C. Fulton* and *H. B. Fryberger,* for respondent.

The doctrine of Baldwin v. Rogers, 28 Minn. 544; Horton v. Kelly, 40 Minn. 193; Aultman & Taylor Co. v. Pikop, 56 Minn. 531, relied upon by appellants, is this: If it is beyond question that the incumbrances exceed the value of the debtor's property, so that there is nothing left from which to exclude his creditors, they are not injured or defrauded; and as the conveyance, therefore, in no way affects the creditors, it is not fraudulent as to them, and they cannot have it set aside. The burden of proof of

no value is upon the debtor. Spooner v. Travelers Ins. Co., 76 Minn. 315, 318.

START, C. J.

Action in the nature of a creditors' bill to reach assets fraudulently transferred by a judgment debtor to his wife. Judgment for the plaintiff, from which the defendants appealed.

The facts, as admitted by the pleadings, or found by the trial judge, are substantially these: The defendant Knute Berven on March 31, 1900, was the owner of an undivided three-fourths of the southeast ¼ of section 4, township 62, range 13, in the county of St. Louis, and located in the iron ore belt of the state. On that day he conveyed his interest therein by warranty deed, in which his wife, Johanna Berven, joined, to Chester A. Congdon, for $10,000 cash, and a further consideration as stated in and secured by a reservation in the deed in these words:

"In addition to said ten thousand dollars said Knute T. Berven, his heirs or assigns, shall receive as a part of the purchase price of said premises, from the then owners thereof, an additional sum of ten thousand dollars when and as soon as, and not before, two hundred thousand gross tons of merchantable iron ore shall have been mined and shipped from said premises; and to secure the payment of said sum when due, if ever, said Knute Berven hereby reserves to himself, his heirs and assigns, a lien upon the demised premises. Nothing herein contained shall impose upon the parties of the second part any personal obligation to pay said additional sum of ten thousand dollars unless he shall himself mine and ship said two hundred thousand tons of ore from said premises, and unless he himself shall be the owner of said premises at the time when said two hundred thousand tons of ore shall be shipped therefrom."

On April 26, 1900, the defendant Knute Berven and his wife executed to Norman Bergum a quitclaim deed of the land. The deed, in addition to the usual terms of quitclaim deeds, contained these words:

"Intending, also, to sell and convey, and the party of the first part does hereby sell, assign, transfer, and convey, to the said party of the second part, the sole right to have and receive and collect of the obligees therein mentioned the sum of ten thousand dollars, agreed to be paid to Knute Berven and his assigns, under

certain conditions, by the grantors in the deed hereinafter mentioned, for the security of which an express lien was reserved on said property. Intending, also, and the said party of the first part does hereby assign and transfer to said party of the second part said lien, and all the rights in said lien and in this property, with full right to satisfy the same. Which said debt, claim, and lien are particularly set forth in a certain deed executed by Knute Berven to Chester A. Congdon on the 31st day of March. 1900 "

On the same day, and as a part of the same transaction, Norman Bergum executed a quitclaim deed of the premises to Johanna Berven, which contained precisely the same provisions as were in the deed to Bergum.

At and prior to the making of these quitclaim deeds the defendant Knute Berven was justly indebted to Otto Erickson in the sum of $500. These deeds were made without any consideration in fact, and were made for the purpose of transferring all the property, claim, and interest and lien therein described from the defendant Knute Berven to his wife, Johanna Berven, in order to hinder, delay, and defraud his creditors,—especially Otto Erickson. All of the deeds were duly recorded in the office of the register of deeds of the proper county. On November 12, 1900, Erickson duly recovered judgment against the defendant Berven for $546.18, being the amount of such indebtedness so due from Berven to Erickson, and interest and costs, and on the same day the judgment was duly assigned to the plaintiff herein for value. Three days thereafter, execution was duly issued on the judgment, and returned wholly unsatisfied. After a verdict was returned for the plaintiff in the action in which the judgment was recovered, and before the entry of the judgment thereon, the defendant Berven went to the state of Oregon to reside, and has never since been a resident of the state of Minnesota. His wife, Johanna, died intestate, a resident of Oregon, April 22, 1901; and the defendant John Brown was duly appointed by the probate court of the county of St. Louis, this state, administrator of her estate. The other defendants are her heirs at law.

As a conclusion of law from the foregoing facts, the trial judge directed judgment in favor of the plaintiff, adjudging, in effect that the claim, interest, or lien of the defendant Knute Berven in

and upon the land here in question, reserved by the deed from him to Chester A. Congdon, is subject to the lien of the plaintiff's judgment, and is held in trust by the defendants to the extent necessary to satisfy the judgment, that such interest be sold on execution. Judgment was so entered. The important question raised by the assignment of errors is whether the facts found justify the trial court's conclusion of law, and the judgment entered thereon.

1. It is the contention of the defendants that they do not, for the reason that the interest or claim sought by this action to be appropriated to the payment of the plaintiff's judgment is not a debt or a chose in action, or an interest in or lien on land, or a legal property interest of any kind, but is purely a speculative and contingent claim, of no ascertainable or substantial value. Therefore any assignment or transfer of it by the judgment debtor could not, in law, be fraudulent as to his creditors.

The agreement in the deed from Berven to Congdon created a lien on or an interest in the granted premises, by reservation to secure the payment of the balance of the purchase price thereof, $10,000, when and not until two hundred thousand tons of iron ore are mined and shipped from the granted premises. Doescher v. Spratt, 61 Minn. 326, 63 N. W. 736. Is such interest or lien property which a creditor may, by appropriate proceedings, have sold for the payment of his debts? We hold that it is. The fact that the claim so secured could not be proved in the probate court or bankruptcy court is not the test whether or not it is property which can be reached by a creditors' bill. Whatever name may be given to the interest reserved in the land, it is just as certainly property which can in some proceeding be appropriated to the payment of the plaintiff's judgment as would be an interest in land securing the payment of a given sum of money to a man less than thirty years of age, when and not until he reached that age. In each case the value of the claim would depend upon the probability of the occurrence of the event which would mature the obligation. There is no essential difference between the two cases, except in the degree of probability of the respective claims ever becoming due. The only difference, if any, is one of degree, for, if it be uncertain whether the amount of iron ore named in

the deed from Berven to Congdon will ever be mined and shipped from the granted premises, so, also, is the continuance of a particular human life.

The question under consideration must be treated in a common-sense and practical way, without attempting to solve it by subjecting it to the test of technical definitions, which were announced under dissimilar business conditions. Dishonest debtors cannot be permitted to defraud honest creditors by a fraudulent transfer of nonexempt property interests arising from new and complex business methods simply because such interests have never before been legally classified or defined. Property interests too contingent to be sold on execution can be reached and applied to the payment of the owner's debts by a creditors' bill. 2 Freeman, Exns. (3d Ed.) § 172a; Wait, Fraud. Conv. § 24. Contingent contracts of the character of the one here in question have been held valid and to create property interests. Wolf v. Marsh, 54 Cal. 228; Ray v. Hodge, 15 Ore. 20, 13 Pac. 599.

The defendants, however, further contend that, inasmuch as the contingent interest in this case has no legal standing or value, there could be no actionable fraud in its transfer. In support of this contention, they cite the cases of Baldwin v. Rogers, 28 Minn. 544, 11 N. W. 77; Horton v. Kelly, 40 Minn. 193, 41 N. W. 1031; Blake v. Boisjoli, 51 Minn. 296, 53 N. W. 637; Aultman & Taylor Co. v. Pikop, 56 Minn. 532, 58 N. W. 551.

Whether or not the doctrine of these cases is legally or ethically sound, we need not inquire. But in any event, the doctrine ought not to be applied to cases in which the facts do not clearly bring them within the rule. In the cases cited it was established beyond reasonable controversy that the property fraudulently transferred, which creditors sought to have applied in payment of their debts, was mortgaged to an amount exceeding its value. While it is true in this case that the finding of the trial court that there was located on the granted premises an iron mine of great value is not supported by the evidence, and, further, that there was no evidence of the value of the contingent interest or lien fraudulently transferred, it is also true that there was no evidence that it was not of substantial value. The fact that a purchaser was

found who was willing to pay $10,000 in cash, and agree contingently to pay a like further sum for a three-fourths interest in a quarter section of land in the mining belt of the state, indicates that the probability of developing a valuable iron mine thereon was very great, which made the land valuable. The court cannot presume that the contingent interest reserved was of no substantial value. If in fact it was not, the burden was on the defendants to establish it. They offered no evidence in the case, but upon their objection the application of the plaintiff to open his case, and show that the value of such contingent interest was about $2,500, was denied. The cases relied on are not in point.

2. It is also urged on behalf of the defendants that there was no evidence of the insolvency of the judgment debtor, and that he inherited one-third of the interest in question from his deceased wife, and, if the interest is of any value, he is not insolvent, and has sufficient property to pay the plaintiff's judgment. The return of the execution nulla bona was competent and sufficient evidence of the insolvency of the judgment debtor, and of no property in the defendant out of which to satisfy the judgment. Moffatt v. Tuttle, 35 Minn. 301, 28 N. W. 509; Spooner v. Travelers Ins. Co., 76 Minn. 315, 79 N. W. 305. It is clear from the record in this case that the plaintiff had no other legal remedy reasonably available and effectual, except in equity for the collection of his judgment. The rule which forbids a resort to equity for relief where there is an adequate legal remedy is not to be applied with such strictness as to practically deny to a party having a right against another, legal or equitable, any reasonable available means of enforcing it. Overmire v. Haworth, 48 Minn. 372, 51 N. W. 121.

3. The last claim urged by the defendants, meriting special mention, is that the plaintiff's judgment was not a lien on the interest in question; hence a creditors' bill will not lie to set aside a fraudulent transfer of the property, for, there being no lien, necessarily the transfer is no obstruction to the enforcement of the lien. It is clear that the plaintiff could not levy on the reserved interest in the land as personal property, by execution, attachment, or garnishment. Gale v. Battin, 16 Minn. 133 (148). If it be conceded that the judgment was not strictly a legal lien on the interest of

the judgment debtor in the land, it by no means follows that the plaintiff is remediless. The plaintiff had a right to have such interest sold to pay his judgment, and the fraudulent transfer was an obstruction to the exercise of such right, for upon the face of the record it appeared that the judgment debtor had no longer any interest in or lien on the land. We are, however, of the opinion that the plaintiff's judgment was a lien upon the interest of the judgment debtor in the land. Atwater v. Manchester Sav. Bank, 45 Minn. 341, 48 N. W. 187.

4. Error is assigned to several rulings of the court as to the admission or rejection of evidence. Many of them are necessarily disposed of by what has already been said. We find no reversible error in any of the rulings. The facts found by the trial court support its conclusions of law and the judgment appealed from. The evidence supports all of the facts found which are essential to support the conclusions of law.

Judgment affirmed.